COMMONWEALTH, EX REL., v. JOHN SMOULTER, JR.

ERROR TO THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

Argued April 18, 1889—Decided April 29, 1889.
[To be reported.]

The act of April 11, 1876, P. L. 20, (amending the act of May 23, 1874, P. L. 230, dividing the cities of the state into three classes, etc.,) as well as the act of May 24, 1887, P. L. 204, dividing the cities of the state into seven classes, etc., being unconstitutional and void, a city containing in 1889 a population of between 23,000 and 24,000, is a city of the third class, under said act of May 23, 1874, and persons licensed to sell liquors by retail therein, under the act of May 13, 1887, P. L. 108, are required to pay a license fee of $500.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 454 January Term 1889, Sup. Ct.; court below, No. 119 May Term 1889, C. P.

On March 4, 1889, William Zirnhelt presented his petition to the court below, showing that on February 23, 1889, at a Court of Quarter Sessions holden, etc., said court had granted to him a license to sell vinous, spirituous, malt or brewed liquors, at retail, in the Fifth ward of the city of Wilkes-Barre; that on March 4, 1889, being within 15 days after said license was granted, the petitioner tendered and offered to pay to John Smoulter, Jr., treasurer of the county of Luzerne, at his office and in business hours, the sum of $300.50, and demanded a receipt and certificate, in full, from said treasurer, to file with the clerk of the courts, in order that his license might be issued as required by law; that said John Smoulter, Jr., treasurer, refused to accept said money as tendered and refused to give his said receipt and certificate; that the city of Wilkes-Barre was a city of neither the first, second, nor third class, but was included in the classification mentioned in § 8, act of May 13, 1887, P. L. 110, as "all other cities," the license fee for which was by said act fixed at $300: The prayer of the petition was that a writ of mandamus might issue commanding the said John

Smoulter, Jr., treasurer, etc., to execute and deliver to the petitioner a receipt and certificate to file with the clerk of the court, for his said license, on the payment of the said sum of $300.

On March 5, 1889, the foregoing petition was dismissed and the writ of mandamus prayed for refused, the court, RICE, P. J., delivering the following opinion:

The precise question for decision is, whether the county treasurer is warranted in demanding from a retail liquor dealer within the city of Wilkes-Barre the sum of five hundred dollars, before issuing to him a receipt, as provided in § 9 of the license act of May 13, 1887, P. L. 108. A decision of this question will also control in the case of wholesale dealers and bottlers.

The language of the act under which this sum is demanded reads as follows: "Persons licensed to sell by retail, resident in cities of the first, second and third class shall pay the sum of five hundred dollars; those resident in all other cities shall pay three hundred dollars."

The population of the city, according to the last decennial census, was between twenty-three thousand and twenty-four thousand, and therefore, according to the classification made by the act of May 23, 1874, P. L. 231, was a city of the third class. But in 1876 the act of 1874 was amended, and the cities of the commonwealth divided into five classes, cities containing a population less than thirty thousand and exceeding twelve thousand being put into the fourth class: Act of April 11, 1876, P. L. 20. Again, in 1887 they were divided into seven classes, and all cities containing less than seventy-five thousand inhabitants were put in the fourth, fifth, sixth and seventh classes. It will be observed, therefore, that, according to the classification of the act of 1876, supposed to be in force at the approval of the license act of 1887, as well as according to the classification of the municipal act of 1887, passed a few days after the retail license act, the city of Wilkes-Barre does not belong to either the first, second, or third class of cities. But both of these acts are wholly unconstitutional and void, and have been so declared by the court of last resort.

The decision in Ayars' App., 122 Pa. 266., goes farther than

simply to declare the municipal act of 1887 unconstitutional; it deals with the subject of classification generally, the grounds upon which it is warranted, and the limits beyond which the legislation cannot go.   Whilst recognizing and reaffirming the constitutionality of the act of 1874, and the classification therein made, it unequivocally decides that any further enlargement of the number of classes cannot be sustained.   Speaking of the acts of 1876 and 1887 specifically, the learned judge who delivered the opinion, says: "Those acts doubtless contain many wise and wholesome provisions, but they are so interwoven with and dependent on others that are unconstitutional and void, that neither of the acts of 1876 and 1887 can be sustained even in part.   It follows that, so far as they affect this question, they are the same as no acts, and that the city of Wikes-Barre is now, and always has been, since the approval of the act of 1874, a city of the third class.

What authority have we for saying. that it is not governed by a general law relating to licenses in cities of that class? If by any rule of construction we are authorized to interpolate words referring to a classification made by some particular act, to what act shall we refer, the act of 1876 or the act of May 24, 1887?

But it is argued that the legislature in grading the amounts to be paid for licenses, had in view a classification of cities, which, although since declared unconstitutional, was at the time supposed to be valid; and it is contended that they would not have graded the amounts as they did had they not so supposed.   Hence, it is claimed that a different effect from what they intended is being given to the law.   If there were any ambiguity in the language adopted by them, there would be force in this argument, for it is a cardinal rule in the interpretation of ambiguous language in statutes, that the intention of the legislature, where that can be ascertained with certainty, is to control.   But where there is no such ambiguity it is perfectly safe to assume that the legislature meant just what they have said.   We may surmise that the legislature would have legislated differently had they foreseen the decision in Ayars' Appeal, but this is pure matter of surmise; there is no legal presumption to that effect and no way in which the surmise can be verified.   The presumption is that the legislature un-

derstood perfectly well that the classification made by the act of 1876 was not fixed and irrevocable, but was liable to be abolished or changed by a subsequent legislature, and to be declared unconstitutional by the courts. Hence they did not grade the licenses according to the classification made by any particular act, but left the question as to what class any particular city might belong, to be determined by valid and constitutional general laws in existence, or to be passed on that subject. If a subsequent legislature had repealed the municipal acts of 1876 and 1887, no one would deny that the city of Wilkes-Barre would fall back into the third class, and licenses therein granted would be governed by the general law relating to that class of cities. We can see no difference in legal effect between a repeal of those laws and a judicial determination that they are unconstitutional and void. The provisions of the eighth section of the license act are plain and unambiguous in terms, and were wisely made flexible so as to adapt themselves to the changed condition of things, and to any valid classification or rearrangement of classes which might be made in the future. Judge McPherson, in a recent opinion, concurred in by Judge Simonton, pertinently says: " If a remedy is needed it must be sought before the legislature. The courts are bound by the plain and unambiguous words of a constitutional statute and ought not to construe them away in mere conjectures that they would not have been used if certain consequences had been foreseen."

Our conclusion is, that the city of Wilkes-Barre being a city of the third class, retail and wholesale liquor dealers therein are each required to pay a license fee of five hundred dollars, and bottlers a license fee of two hundred dollars.

Now, March 5, 1889, mandamus is refused and the petition dismissed.

An exception to the above order having been sealed for the petitioner, and a decree entered in accordance with the opinion, the petitioner took this writ, specifying that the court erred:

1. In finding that the city of Wilkes-Barre was a city of the third class, and that retail dealers in liquors therein were each required to pay a license fee of $500.

2. In dismissing the relator's petition and refusing a writ of mandamus as prayed for.

*Mr. Edwin Shortz* (with him *Mr. E. Robinson*), for the plaintiff in error.

*Mr. W. S. Kirkpatrick*, Attorney-general, and *Mr. William S. McLean* for the defendant in error, were not heard.

PER CURIAM:

This case is affirmed upon the opinion of the learned president of the court below.

Judgment affirmed.